**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2267-18T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.D.W.[1],

     Defendant-Appellant,

and

A.G., JR.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.C.W.,

     a Minor.

_____

---

[1] We utilize the parties' initials to assure confidentiality pursuant to Rule 1:38(d).

Submitted January 7, 2020 – Decided February 11, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0042-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Gilbert G. Miller, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Donna Sue Arons, Assistant Attorney General, of counsel; Joshua Paul Bohn, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

T.D.W. appeals from a January 11, 2019 Family Part order terminating her parental rights to A.C.W. born in February 2017. We affirm.

I.

T.D.W. is the biological mother of A.C.W.[2] T.D.W. has a long history with the Division of Child Protection and Permanency (Division). Prior to

_____

[2] A.C.W.'s father, A.G., surrendered his parental rights on October 22, 2018 to A.C.W.'s resource parent, A.C., and has not appealed.

A.C.W.'s birth, T.D.W. lost custody of another child. She has substance abuse and mental health issues, and she has been unable to maintain safe and stable housing. The Division conducted a Dodd[3] removal of A.C.W. at birth because A.C.W. tested positive for cannabis.

T.D.W. was living with Martin[4] when A.C.W. was born. Martin was on probation, after serving several years in prison, and claimed to be drug free. His criminal record was significant for a criminal sexual assault conviction of a female, burglary, aggravated assault, domestic violence, and drug offenses. The Division made efforts towards reunification but ultimately filed a complaint seeking termination of T.D.W.'s parental rights, with A.C.W.'s adoption by A.C., her non-relative resource parent with whom she had been placed since May 2017.

The guardianship trial commenced in November 2018. We discern the following facts from evidence adduced at trial.

---

[3] A "Dodd removal" refers to the emergency removal of a child without a court order, as authorized by N.J.S.A. 9:6-8.29 of the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82.

[4] We use a pseudonym for Martin to protect the privacy of the parties and for ease of reference.

T.D.W. was diagnosed with bipolar disorder and depression. In May 2017, she expressed suicidal ideation, suffered a severe panic attack, and was non-compliant with taking her medications. On May 8, 2017, T.D.W. was taken to the Helene Fuld Clinic for evaluation and treatment and on May 28, 2017, she was referred to a program at the Children's Home Society to address substance abuse, mental health, and parental fitness.

T.D.W. inconsistently attended individual and group counseling, and she was denied entry into a substance abuse treatment program, referred to her by the Division, for failing to attend her intake appointment. In June 2017, Dr. Jeffrey B. Allen, T.D.W.'s therapist, advised the Division that T.D.W.'s motivation decreased, she was increasingly disorganized, and returned to self-medicating with marijuana. She was referred for individual counseling with a different therapist, therapeutic visits and parenting classes. In August 2017, T.D.W. was admitted to Rescue Mission of Trenton for substance abuse treatment and counseling.

In January 2018, T.D.W. was terminated from Oaks Integrated because of her noncompliance. The record shows T.D.W. never received substance abuse treatment at Oaks Integrated even though she claimed she had. On January 24,

2018, the court determined that the Division's change in goal from reunification to adoption for A.C.W. was appropriate.

On February 23, 2018, T.D.W. was evaluated by Dr. David R. Brandwein to determine whether any mental condition would impact or impair her ability to parent A.C.W.  Dr. Brandwein noted that T.D.W. was "exposed to a number of aversive childhood experiences . . . [which] have clearly led to negative outcomes in adulthood for [T.D.W.], including housing problems, substance-related problems, mental health difficulties, and difficulties with romantic relationships."  In conclusion, Dr. Brandwein opined that T.D.W. could not meet the child's needs, and T.D.W. was cohabiting with an individual with a significant criminal history who could not participate in a reunification plan. Dr. Brandwein did not endorse T.D.W. as a caregiver for A.C.W. presently or in the foreseeable future.

On March 15, 2018, the Division filed a verified complaint for guardianship of A.C.W.  Thereafter, T.D.W.'s visits with A.C.W. were sparse, and T.D.W. ceased making herself available to the Division.  In August 2018, T.D.W. was terminated from a court mandated program for not attending and complying with services.  She continued to resist meeting with her caseworker

5

and chose to live with Martin despite having the financial ability to live independently.

On October 22, 2018, Dr. Brandwein conducted a bonding evaluation between T.D.W. and A.C.W. and noted the child had no reaction to seeing her mother during the session. Dr. Brandwein reported that A.C.W. does not depend on T.D.W. to fulfill parental functions and "much of [T.D.W.'s] life has been characterized by levels of psychological and personal instability that are anathema to raising children." Ultimately, Dr. Brandwein recommended permanent placement of A.C.W. with her resource mother, A.C.

The guardianship trial was conducted over five days. Two Division caseworkers, Dr. Brandwein, and T.D.W. testified. Following the conclusion of the trial, the judge issued a sixty-eight-page written opinion finding that the caseworkers and Dr. Brandwein were credible witnesses. The court also found T.D.W. "is simply unwilling or unable to eliminate the harm facing [A.C.W.] and is unable or unwilling to provide a safe and stable home for the child." The court rejected T.D.W.'s testimony as not credible as it pertained to her personal relationship with Martin.

The court determined that "the Division has satisfied each prong of the best interests of the child standard . . . by clear and convincing evidence," under

6

N.J.S.A. 30:4C-15.1, and entered an order terminating T.D.W.'s parental rights and awarding guardianship to the Division. This appeal followed.

II.

The scope of our review on an appeal from an order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We will uphold a trial judge's factfindings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). No deference is given to the court's "interpretation of the law," which is reviewed de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012) (citing N.J. Div. of Youth & Family Servs. v I.S., 202 N.J. 145, 183 (2010); Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999)).

We "accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate

court intervene and make its own findings to ensure that there is not a denial of justice." E.P., 196 N.J. at 104 (quoting G.L., 191 N.J. at 605.) We also accord deference to the judge's credibility determinations "based upon his or her opportunity to see and hear the witnesses." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006) (citing Cesare, 154 N.J. at 411-13).

When considering a petition for the termination of parental rights, the court focuses on the "best interests of the child standard" and may grant the petition when the four prongs set forth in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence. In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999). "The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." Id. at 348.

T.D.W. contends there was insufficient evidence supporting the court's findings on each of the four prongs and the court incorrectly applied the principles governing the termination of parental rights. After reviewing T.D.W.'s arguments in light of the record and applicable legal principles, we are convinced that there is substantial credible evidence supporting the court's findings of fact and determination that the Division established by clear and

convincing evidence under N.J.S.A. 30:4C-15.1(a) that it was in A.C.W.'s best interests to terminate T.D.W.'s parental rights. We note, however, the following.

A.    Prong One

The first prong of the best interests of the child standard requires the Division to establish that "[t]he child's safety, health or development has been or will continue to be endangered by the parental relationship. . . ." N.J.S.A. 30:4C-15.1(a)(1). "[T]he Division must prove harm that 'threatens the child's health and will likely have continuing deleterious effects on the child.'" N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 25 (2013) (quoting K.H.O., 161 N.J. at 352).

We are not persuaded by T.D.W.'s argument that she never impaired A.C.W.'s health and development, and there was no evidence that Martin did not currently pose a risk to A.C.W. Further, we reject T.D.W.'s argument that she improved her parenting skills and complied with services.

The focus under the first prong is not on any "single or isolated harm," but rather on "the effect of harms arising from the parent-child relationship over time on the child's health and development." K.H.O., 161 N.J. at 348 (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-10 (1986)). The harm may be established by "a delay in establishing a stable and permanent

home." In re Guardianship of DMH, 161 N.J. 365, 383 (1999). "A parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Id. at 379 (citing K.H.O., 161 N.J. at 352-54). Additionally, a parent's "persistent failure to perform any parenting functions and to provide . . . support for [the child] . . . constitutes a parental harm to that child arising out of the parental relationship [that is] cognizable under N.J.S.A. 30:4C-15.1(a)(1) and (2)." Id. at 380-81 (citing K.H.O., 161 N.J. at 352-54).

We are satisfied there is substantial credible evidence supporting the court's finding under the first prong of the best interests of the child standard, N.J.S.A. 30:4C-15.1(a)(1), that T.D.W. caused harm to A.C.W. because the child tested positive for marijuana at birth, and T.D.W.'s inconsistent visits, inability to secure stable housing, failure to comply with court-ordered services, continued relationship and cohabitation with Martin, and unwillingness to make herself available to the Division, endangered A.C.W.'s safety, health and development.

Contrary to T.D.W.'s assertion, the court's finding of harm was not based upon a "jumbled and cryptic" recitation of Martin's criminal offenses. T.D.W. contended Martin was a "positive support" for her. The credible evidence

established that T.D.W. did not comprehend the danger Martin posed to A.C.W.'s safety based upon his extensive criminal history. The court aptly noted that T.D.W. delayed finding her own housing appropriate for reunification with A.C.W.

Moreover, the credible evidence in the record shows that T.D.W. believed A.C.W. tested positive for marijuana because T.D.W. "did not drink enough water to get the drugs out of her system." T.D.W. has never accepted responsibility for her actions and was non-compliant with taking her medications. She failed to undergo random urine drug screen testing and a hair follicle test as directed by the Division. In June 2018, T.D.W. missed over a month of visits with A.C.W. because "her boyfriend was in the hospital" and she was "very busy."

We are therefore convinced that the court had substantial credible evidence supporting its finding of harm. The evidence supports the court's conclusion that T.D.W. will never achieve sufficient personal or psychological stability necessary to parent A.C.W. The court correctly found that the Division established harm under the first prong of the best interests standard.

B.     Prong Two

The second prong relates to parental unfitness and requires the Division to prove that the "parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child . . . [and] [s]uch harm may include evidence that separating the child from his [or her] resource family parents would cause serious and enduring emotional or psychological harm to the child. . . ." N.J.S.A. 30:4C-15.1(a)(2).  In analyzing the second prong as it relates to harm, courts are permitted to consider evidence presented pertaining to the first prong, which also deals with harm.  DMH, 161 N.J. at 379.  The focus is "whether it is reasonably foreseeable that the parents can cease to inflict harm upon the children entrusted to their care."  A.W., 103 N.J. at 607.

T.D.W. argues that the second prong of the best interests standard is not relevant because A.C.W. did not suffer harm under prong one, and therefore, there could be no finding of harm under prong two. We disagree.  As noted, the court's finding of harm under the first prong of the standard was supported by substantial credible evidence and was otherwise proper.

T.D.W. also argues that she manifestly improved her stability by obtaining stable housing and full-time employment for more than a year prior to trial.  And,

12

she showered A.C.W. with affection, attended the twelve-week parenting course, and was proficient during the program. The Court in K.H.O. held that the second prong may be satisfied "by indications of parental dereliction and irresponsibility, such as . . . the inability to provide a stable and protective home [and] the withholding of parental attention and care. . . ." K.H.O., 161 N.J. at 353. Harm considerations may also include the harm caused by "separating the child from his [or her] resource family parents. . . ." N.J.S.A. 30:4C-15.1(a)(2).

Here, the evidence supports the court's finding that T.D.W. was unable and unwilling to eliminate the risk of harm to A.C.W. Based upon his evaluation of T.D.W., Dr. Brandwein concluded that she was not capable of parenting A.C.W. at the present time, and T.D.W. consistently surrounded herself with paramours who pose a serious harm to A.C.W. and her other children. Additionally, T.D.W. refused to take responsibility for her role in the removal of her two older children.[5]

T.D.W.'s decision to forego numerous opportunities to visit with A.C.W., and her failure to accept responsibility for her conduct provided ample support

---

[5] T.D.W.'s two other children were removed from her care, in part, because she continued to reside with a different paramour who also "pose[d] risks to the children's safety and well-being . . . ." N.J. Div. of Child Prot. & Permanency v. T.D.W., No. A-2620-17 (App. Div. Feb. 28, 2019) (Slip op. at 19).

A-2267-18T2

for the court's determination that T.D.W. was unwilling "to find safe housing for [A.C.W.] that is free of [Martin]." Furthermore, the court added, "delaying permanent placement will add to the harm that the child has already suffered, as [A.C.W.] has been in placement since February 8, 2017 . . . ."

Moreover, the evidence supports the court's finding that separating A.C.W. from her resource mother would cause harm. Deferring to the court's fact findings, see F.M., 211 N.J. at 448, we are convinced the record contains clear and convincing evidence that T.D.W. is unwilling to eliminate the harm facing A.C.W., including the harm that would result if A.C.W.'s placement with her resource parent was delayed or not made permanent. N.J.S.A. 30:4C-15.1(a)(2).

C.   Prong Three

The third prong of the best interests of the child standard requires the Division to establish that it made reasonable efforts to help the parent correct the circumstances that led to the child's removal from the parent's care, and "considered alternatives to termination of parental rights. . . ." N.J.S.A. 30:4C-15.1(a)(3). "The diligence of [the Division's] efforts on behalf of a parent is not measured by their success. . . . These efforts must be assessed against the

standard of adequacy in light of all the circumstances in a given case." DMH, 161 N.J. at 393.

We are not persuaded by defendant's argument that the Division failed to make reasonable efforts to provide services. "Reasonable efforts" means "attempts by an agency authorized by the [D]ivision to assist the parents in remedying the circumstances and conditions that led to the placement of the child and in reinforcing the family structure, including, but not limited to:" developing a plan for reunification; providing agreed upon services; informing the parent of the child's progress; and "facilitating appropriate visitation." N.J.S.A. 30:4C-15.1(c). "Whether particular services are necessary in order to comply with the [reasonable] efforts requirement must . . . be decided with reference to the circumstances of the individual case before the court . . . ." DMH, 161 N.J. at 390. The Division's efforts need not be successful to be reasonable. F.M., 211 N.J. at 452.

The record reflects that T.D.W. received multiple referrals to substance abuse treatment centers, counseling, therapy, parenting classes, therapeutic visitation, three psychological evaluations and two bonding evaluations. In addition, the Division provided A.C.W. with Medicaid, two non-relative resource placements, therapeutic visitation, the assistance of a Division nurse to

15                                                                                    A-2267-18T2

provide updates on the child's healthcare needs, and transportation for parenting time with T.D.W. and her siblings.

T.D.W. contends that the Division failed to communicate, cooperate, and consult her about reunification with A.C.W. with Martin as a co-parent, or about her stepmother, Emma, becoming a custodial parent. After the guardianship complaint was filed, T.D.W. argues that a Division attorney new to the case urged the court to order T.D.W. to cease residing with Martin because of his criminal history.

As the trial court correctly noted, T.D.W. has failed to sufficiently take advantage of the Division's services and benefit therefrom, despite the Division's reasonable efforts to provide them. Moreover, Dr. Brandwein testified that T.D.W. continues to remain romantically involved with Martin and therefore, should not be reunified with A.C.W. Martin's criminal history was extensive and violent, and Dr. Brandwein opined that A.C.W. should not be allowed near him. Further, T.D.W. presented no evidence or expert testimony to opine that Martin could co-parent A.C.W.

The same holds true for T.D.W.'s stepmother, Emma, who actually is "a previous girlfriend of the dad," according to a caseworker. Similar to Martin,

Emma is not a relative of A.C.W. requiring the Division's investigation, and T.D.W. did not suggest Emma as a placement option until August 2018.

We are therefore satisfied that the court correctly determined that the Division established by clear and convincing evidence the third prong of the best interests standard. N.J.S.A. 30:4C-15.1(a)(3).

D.    Prong Four

The fourth prong of the best interests of the child standard requires the Division to show that termination of defendant's "parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). Termination of parental rights poses a risk to children due to the severing of the relationship with their natural parents, but it is based "on the paramount need the children have for permanent and defined parent-child relationships." K.H.O., 161 N.J. at 355 (quoting In re Guardianship of J.C., 129 N.J. 1, 26 (1992)).

Thus, "the fourth prong of the best interests standard [does not] require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. The court must consider and balance whether "the child will suffer a greater harm from the termination of ties with [his or] her natural parents than from the permanent disruption of [his or] her relationship with [his or] her foster parents." Ibid.

Here, there is sufficient credible evidence in the record supporting the trial judge's finding that the Division established prong four of the best interests of the child standard. The judge appropriately concluded that T.D.W. will not be able to safely and appropriately care for A.C.W. now or in the future. T.D.W. still exhibits the same behaviors, such as inconsistent attendance at services, and a relationship with a dangerous paramour. Moreover, A.C.W. has resided with her resource parent for most of her life, who meets the child's needs and is becoming her psychological parent.

T.D.W.'s argument that her fourteenth amendment right to family autonomy and association lacks sufficient merit to warrant any discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2267-18T2